## McClane, Appellant, v. McClane.

207
s213

465
294

*Will—Power of sale—Executors and administrators.*

Testator authorized and empowered his executors, who were three of his seven children, to sell coal underlying a farm particularly designated, and to apply the proceeds in payment of debts and legacies.   By a subsequent clause he directed that after the coal was sold the farm should be appraised, and if his three sons, the executors, chose to take the farm, they might do so on paying to the other children the latter's proportionate shares, such shares being charged upon the land.   If the sons declined to take the farm the executors were to sell the same, and distribute the proceeds in a manner specified later in the will.   He then directed that his estate not specifically bequeathed, including either the valuation or purchase money of the farm, should be divided into eleven parts, and distributed among his children.   After testator's death, and without any sale of the coal, and without any appraisement having been made, the three sons, describing themselves as executors and devisees, granted to a railway company for the consideration of $2,000 a right of way through the farm, for more than half a mile on a strip of land fifty feet wide.   The other children of the testator filed a bill against the executors and the railway company, to restrain the construction of the railway.   *Held*, (1) that as none of the events which were a condition precedent to the authority to sell, had happened, the sale was ineffective ; (2) that complainants were entitled to an injunction ; (3) that equity had jurisdiction to preserve the estate from irreparable damages.

Equity has jurisdiction to establish a right under a will, and to compel performance of their duties by executors, as incident to that right.

Argued Oct. 22, 1903.   Appeal, No. 173, Oct. T., 1903, by plaintiffs, from decree of C. P. Washington Co., No. 1322, in equity, dismissing bill in equity in case of William McClane, Mary McClane, Bessie McClane and Rebecca McClane, a minor, by her next friend, Mary McClane, v. Ebenezer McClane, Malcolm W.· McClane and J. Albert McClane, Executors of M. W. McClane, deceased, Arthur Kennedy and the Washington & Canonsburg Railway Company.   Before MITCHELL, C. J., DEAN, FELL, MESTREZAT and POTTER, JJ.   Reversed.

Bill in equity for an injunction.   Before McILVAINE, P. J.

In addition to the facts stated in the opinion of the Supreme Court it appeared that the material portions of the .will of testator were as follows :

VOL. CCVII—30

" First: I authorize and direct my executors hereinafter named to sell at such time and in such manner as may seem to them most advantageous my real estate situate on the corner of Highland and Forrest avenues in the borough of Washington, my lots in North Washington borough, and my farm in South Strabane township and apply the proceeds thereof, or so much as may be necessary to the payment of my debts. I desire that this shall be done as soon as can be without sacrificing the property. If my executors shall deem it advisable to temporarily raise money for payment of debts, I authorize them to mortgage said real estate until an advantageous sale can be made."

" Third: If, in the judgment of my executors, it should appear necessary or advantageous to sell the Pittsburg vein of coal underlying my farm in Chartiers township, I authorize and empower them to do so, in such manner and time as will produce the best price, and to apply the proceeds thereof to the payment of debts, if needed for that purpose, and to the payment of legacies as hereinafter provided.

" Fourth : I give and bequeath to my three sons Malcom W. McClane, Ebenezer McClane and John Albert McClane, all the livestock, machinery, farming implements, farm products and other personal property on the home farm, outside of the dwelling house, to be theirs as tenants in common and to be held together as long as they may occupy and do business together on the farm.

" Fifth: I direct that, after the sale of the Pittsburg vein of coal underlying my home farm in Chartiers township, the farm shall be appraised by three competent appraisers, viz : Julius Le-Moyne, R. D. Wylie and Van Eman Johnson, at its fair market value. If my three sons, Ebenezer, Malcom and Albert choose to take said farm at the valuation put upon it by said appraisers they may do so and in that event I give and devise said farm to them upon their paying to my other children their proportionate shares thereof as hereinafter provided, which shares are hereby charged upon said land. If my said sons shall decline to accept said farm at the appraised value as aforesaid, I direct my executors to sell the same and distribute the proceeds as hereinafter directed.

" Sixth: As long as my daughters or either of them, remain unmarried, they or she shall be entitled to a home on the farm,

this right or privilege to cease if the farm should be sold by my executors or by my sons who may take the farm."

"Eighth: I have advanced to my son William the sum of seven thousand dollars ($7,000) and I count the cost of his education at two thousand dollars ($2,000) making the aggregate amount advanced to him out of my estate nine thousand dollars ($9,000). I consider that I have likewise advanced to my son Albert two thousand dollars ($2,000) in his education. These amounts I direct shall be charged against the distributive shares of my said sons.

"Ninth: All the rest, residue and remainder of my estate I give and bequeath as follows:

"I direct that, after payment of debts and expenses, the estate and property not specifically bequeathed, including the valuation or purchase money of the home farm and the advancements made to my sons William and Albert, shall be divided into eleven (11) shares, each of my sons William, Ebenezer, Malcom and Albert to receive two (2) shares, subject so far as William and Albert are concerned to advancements as aforesaid, and each of my daughters, Mary, Bessie and Rebecca to receive one (1) share thereof.

"Upon reflection I have concluded that the total advancement to be counted against the share of William, and included in the distribution of the residue, shall be $7,000 instead of $9,000.

"Tenth: I constitute and appoint my three sons Ebenezer McClane, Malcom W. McClane and J. Albert McClane executors of this my will, giving them full power and authority to sell real estate hereinbefore directed to be sold or to borrow money upon mortgage as provided herein, and to execute all proper deeds, conveyances or mortgages as fully as I could myself do if living. As my said sons are fully provided for in the distribution of my estate, I direct that they shall not charge or receive any commission or compensation for their services as executors. I leave it to the discretion of my executors to determine when to make sale of the properties directed to be sold, only expressing the wish that they shall settle the estate as expeditiously as they can, yet so as to obtain the best prices for properties to be sold."

*Error assigned* was decree dismissing the bill.

*T. F. Birch,* with him *Donnans & Brownson,* for appellants.—
When a will directs a sale to be made at a certain time, or after
the occurrence of a certain event, an attempted sale made be-
fore the specified time or occurrence is invalid : Loomis v. Mc-
Clintock, 10 Watts, 274 ; Sweigart v. Fery, 8 S. & R. 299 ;
Wells v. Sloyer, 1 Clark, 516 ; Ervine's Appeal, 16 Pa. 256.

A bill in equity is a proper remedy to establish a right un-
der a will: Fidelity Ins. Co.'s Appeal, 99 Pa. 443 ; Hall's
Appeal, 112 Pa. 42 ; Crowell's App., 2 Watts, 295.

*John H. Murdock,* with him *Edgar B. Murdock,* for appellees.—
If it should be held that the sons made the grant as executors,
this was no more than they had a right to do under the will :
Higgins v. Sharon Borough, 5 Pa. Superior Ct. 92.

A court of equity has no jurisdiction of this case : Mc-
Cullough v. Irvine, 13 Pa. 438 ; Woodman v. Good, 6 W. & S.
169.

OPINION BY MR. JUSTICE DEAN, January 4, 1904 :

M. W. McClane owned several farms in Washington county,
among others what was known as the " home farm " of 214
acres situated in Chartiers township and having on it the
mansion house.   On February 27, 1902, McClane died leaving
a will, by which he disposed of all of his estate among his
seven children, four sons and three daughters, and appointed
three of the sons, Ebenezer, Malcolm and Albert, executors of
the will.   On May 3, 1902, they, by a writing, in which they
style themselves executors and devisees under the will of
their father, granted to Arthur Kennedy (and his assigns)
who was acting for the defendant railway company, for the
consideration of $2,000, " the free and uninterrupted right of
way " through the farm for more than half a mile on a strip of
land fifty feet wide; then followed mutual stipulations, to
promote the convenience and advantage of both parties, and a
covenant that the contract should run with the land.   These
plaintiffs, brothers and sisters of the executors, then filed this
bill, averring that under the will of their father, their brothers,
either as executors or devisees, were without power to make
the grant; that the construction of the railway would do
irreparable damage to the estate, and praying that an injunc-

tion issue against both Kennedy and the company restraining them from entering upon the land to construct the railway. To this, defendant Kennedy filed demurrer: 1. That plaintiff's bill on the face of it exhibited no facts warranting an injunction. 2. That plaintiffs have an adequate remedy at law even if there were any foundation for the complaint.

After hearing, the court below sustained the demurrer, and dismissed the bill. We have now this appeal by plaintiffs assigning for error the decree of the court.

It is obvious from the bill and demurrer, that the issue turns on the true construction of the will of the father. The three sons, as executors, at law had no power over the real estate except to appropriate it, under the direction of the orphans' court in payment of debts. The testator did not absolutely, devise the "home farm" to any of his children; he says in the third clause of his will, " If in the judgment of my executors it should appear necessary or advantageous to sell the Pittsburg vein of coal underlying it in Chartiers township, I authorize and empower them to do so," and apply the proceeds in payment of debts if needed and the legacies hereinafter provided. This was apparently, taking the clause as standing alone, a discretionary power to sell the subsurface of the land, the coal. Then in the fifth clause he says: "I direct that after the sale of the Pittsburg vein of coal underlying my home farm in Chartiers township the farm shall be appraised by three appraisers, LeMoyne, Wylie and Johnson, at its fair market value. If my three sons, Ebenezer, Malcolm and Albert, choose to take said farm at the valuation put upon it by said appraisers, they may do so, and in that event I give and devise said farm to them upon their paying to my other children their proportionate shares thereof as hereinafter provided, which shares are hereby charged upon said land. If my said sons shall decline to accept said farm at the valuation aforesaid, I direct my executors to sell the same and distribute the proceeds as hereinafter directed."

Then, after some bequests of personalty and direction as to charging certain advancements, he directs that his estate not specifically bequeathed, including either the valuation or purchase money of the home farm, should be divided into eleven parts, each of the sons to get two parts subject to the advance-

ments made to William and Albert respectively, and each of the three daughters one part. He then gave to his executors full authority to sell lands, which he had directed to be sold in the first and third clauses in his will, that is, property in the borough of Washington, his farm in Strabane township and the Pittsburg vein of coal under the home farm; he then as be- fore noticed, appoints the three sons executors. He gives the executors discretion as to the time of sale of the land directed to be sold, but there is not a word in the will conferring directly, authority to sell the home farm; they have direct authority to sell so much of it as consists of the horizontal seam of coal under it but not to sell the surface. As to this, their authority is wholly contingent upon events which might or might not happen; if appraised by the three appraisers named by the tes- tator and the three sons accept it at the appraisement, then it goes to them as devisees, and all power over it as executors is gone. They can do with it as individuals what they please; but until an appraisement is made, and the farm accepted, they have no authority over it as owners; nor until they refuse to accept as devisees have they authority to sell as executors; "if my said sons shall decline to accept said farm" then and not until then have the executors authority to sell. He makes the happening of the events, the appraisement, the acceptance at the appraisement or the refusal to accept, the clearly marked line dividing their rights as individual owners or devisees from their authority as executors to sell.

No step was taken towards having the appraisement made; the farm could not be accepted without one, nor could the ex- ecutors as such grant a permanent easement through the land. The coal vein has not been sold, no appraisement has been made of the farm, yet the three sons assuming to act in the double capacity of owners and executors have undertaken to dispose of a valuable easement through the farm against the protest of the other devisees.

The learned judge of the court below, from his interpretation of the will, reaches a conclusion different from ours. He is of opinion that there was no intention by the testator to sever the coal from the surface of the home farm; that the third and fifth clauses of the will merely show an intention to give the three sons the option of accepting the farm at an appraisement

with the coal unsevered or severed.   While the third clause on first reading, does, apparently, indicate such intention, yet when read in connection with the fifth and tenth clauses it will not bear that construction.   In the third he says : " If in the judgment of my executors it should appear necessary or advantageous " to sell the coal, then they are empowered to do so in such manner and time as will produce the best price and apply the proceeds to payment of debts if needed and legacies.   Then, in the fifth, he directs an appraisement after the sale of the coal, without intimating that the sons may not think it advantageous or necessary to sell the coal at all; then, in the tenth clause, without hinting at a third contingency, made apparently possible by the third clause, he disposes of his residuary as if the third and fifth constituted a peremptory direction to sever the coal, for he specifically mentions the valuation money or purchase money as part of his residuary estate.   Yet if the sale of the coal were wholly discretionary under the third clause, there might not have been an appraisement, when they could have accepted at a valuation, or have had the right to sell as executors on refusal to accept as devisees.

We think to harmonize the different expressions of intention and arrive at the real intention from the whole will, we must conclude that the discretion reposed in the executors was not as to the fact of exercising it, but as to the time and manner of its exercise ; whether it should be done immediately or postponed for a reasonable time ; but sell the coal they must sooner or later before the devise to the sons could take effect.   Without the sale there could be no appraisement; without the appraisement and refusal to accept there was no direct power given the executors to sell for any purpose ; their general powers only could be exercised under the supervisions of the orphans' court.   Without the sale of the coal and appraisement preliminary to acceptance or refusal there is no specific devise of the home farm to the sons, which manifestly, was not the intention of the father.   This view is fortified by the closing words of the will : " I leave it to the discretion of my executors to determine when to make sale of the properties directed to be sold, only expressing the wish that they shall settle the estate as expeditiously as they can, yet so as to obtain the best price for the properties sold."   He does not intimate that any discre-

tion as to the fact of selling has been granted, but reiterates the discretion as to the time of sale.

As to the jurisdiction of equity in such a case, we think at this stage of administration of the estate all the devisees have an interest in preserving it, until the purpose of the testator has been carried out in the method specified by him. For while in fact still land, there has been in contemplation of law a conversion of it into money; that money may be a greater or less sum depending upon the management of the property before actual conversion. The plaintiffs claim an interest in the land until that interest in the land has been divested by actual conversion; they can establish that right now, in equity, before irreparable damage be done the land by unauthorized acts of the executors. "Equity has jurisdiction to establish a right under a will and to compel performance of their duties by executors, as incident to that right:" Hall's Appeal, 112 Pa. 42.

Therefore the decree of the court below is reversed, the demurrer is overruled, the bill reinstated and injunction as prayed for directed to issue, with such respite to defendant, as may in the discretion of the court below, not unnecessarily damage defendant or plaintiff.