## McClane, Appellant, v. McClane.

*Railroads—Right of way—Invalid grant—Estoppel—Equity—Retention of bill.*

Where a railroad company has constructed its road in good faith on lands of a decedent under a deed from persons having no authority to make the grant, and subsequently the devisees file a bill against the railroad company to compel the removal of the road, and it appears that the real purpose of the bill was to compel the defendant company to permit railroad crossings, and that the company had obligated itself to permit crossings, and it also appears that the lands were enhanced in value by the construction of a railway, and that five out of the seven devisees who were parties to the suit were estopped by their conduct or silence, the court will refuse the injunction, but will retain the bill to enforce if necessary the agreement of the railroad company as to the crossings.

Argued Oct. 21, 1905. Appeal, No. 99, Oct. T., 1905, by plaintiffs, from decree of C. P. Washington Co., No. 1322, in equity, on bill in equity in case of William McClane, Mary McClane, Bessie McClane and Rebecca McClane, a minor, by her next friend, Mary McClane, v. Ebenezer McClane et al., Executors of M. W. McClane, deceased, Arthur Kennedy and the Washington & Canonsburg Railway Company. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Bill in equity for an injunction.

McILVAINE, P. J., filed an opinion which was in part as follows:

From the proofs in the case, it is apparent that the interests of each of the seven children of M. W. McClane in the subject-matter of dispute in this controversy are one and the same. Because the four plaintiffs have made their three brothers (who are executors of their father's will) defendants in place of having them join with them as plaintiffs, does not alter the fact that the principal relief specially prayed for (the mandatory injunction) is for the benefit of all; nor does it alter the fact that the seven joined shortly before the bill was filed in a demand upon the railway company that it substitute a new agreement for the old one, and that they then gave the ulti-

matum that this must be done or otherwise suit would be entered to compel the company by mandatory injunction to remove from the premises. Let us then see what relation each of these seven persons interested in this farm sustains to the railway company as bearing upon their right to invoke the aid of a court of equity in having it evicted therefrom. And first as to the three brothers who are made defendants.

It is not denied that they in good faith executed and delivered to the assignor of the railway company the agreement attached to the plaintiffs' bill wherein they as executors and devisees under the will of M. W. McClane, deceased, granted the right to enter upon the farm in question and occupy the strip of ground now occupied by the Washington & Canonsburg Railway Company for railway purposes and that they received therefor $500 in cash and a covenant to pay the additional sum of $1,500 and that they still retain the sum of $500 and have not offered to return it; it is not denied that these brothers when they made the contract were in possession of this farm, that they cut timber off it and sold the same for the use of themselves, doing business as M. W. McClane's Sons, and that they reopened an old and abandoned coal mine on the farm and operated it for their joint use in the firm name of M. W. McClane's Sons; it is not denied that the Washington & Canonsburg Railway Company some months before this bill was filed, under the grant made by these brothers, entered upon this farm and took full and exclusive possession of the strip of land now occupied by its track and that the company had fenced and graded the same, and that this was done by the company in good faith, under a claim of right and in the belief that the grant made by the three brothers was a valid conveyance ; it is not denied that the three brothers knew that the company so entered and that it was at large expense constructing its road across their farm relying on the validity of the grant in question ; and it is not denied that these three brothers before any question was raised as to the validity of their grant, doing business as M. W. McClane's Sons, sold ties to this company to be used in the construction of its road and that these ties were made of timber cut from this farm by them.

Under these facts, we think it is clear that the Washington

& Canonsburg Railway Company as against these three brothers is entitled to continue in possession of the strip of ground they have inclosed for its way across this farm, and that they would be estopped from calling in question the validity of the grant they made.

Let us now consider the case of Mary McClane and Bessie McClane, two of the plaintiffs. These two young ladies lived on the farm in question and the family relation existed between them and the three brothers who made the grant of the right of way across the farm : they knew that the grant had been made by their brothers; they must have known that the brothers were cutting timber off the farm and that they had opened an old abandoned mine and were operating it under the firm name of M. W. McClane's Sons ; they must have known that the defendant company had entered and taken possession and fenced the way for its track across their farm and that it was expending large sums of money in grading the track and that this was done under a claim of right on the part of the company who relied on the validity of the grant made by the three brothers ; and knowing all this they never in any way intimated to the defendant company (until very shortly before the bill was filed) that they would claim that this grant was invalid. The relation they sustained to their brothers, their desire to have the road built, their seeing its construction from the house in which they lived, their knowledge that the brothers were selling ties made of timber cut on the farm to the railway company to construct its road, would suggest to any reasonable mind that they consented to and approved of the action of the brothers in permitting the railway company to construct its road across the farm and that it would not be considered as a trespasser in entering thereon for that purpose. If they were unwilling that the road should be built across the farm, it was their duty to speak to the railway company and make known to it their dissent before it improved the way granted to it. In our opinion they were too late in making known their objections and that they have failed to show any just excuse for this delay; they were in possession of all the facts, they were of full age, and it will not do to now say that they relied upon what their brothers told them as to a question of law concerning which they took no legal advice until the brothers discov-

ered that they might need a crossing for a coal road over the railway track to the track of the steam railroad and put them and their coplaintiffs forward as persons who could best make the attack on the railway company's title for the joint benefit of all.

This brings us to the consideration of the other two plaintiffs. William McClane lives in the state of California, and although he did not sign nor verify the bill and was not examined as a witness, yet we must infer in the absence of proof to the contrary, that he did not have knowledge of the facts to which we have referred as being within the knowledge of those that lived on the farm. The burden is on the defendant company to prove the facts out of which an estoppel grows. The other plaintiff, Rebecca McClane, at the time the bill was filed was a minor. As to these two plaintiffs, we are of the opinion that the defendant company has failed to prove such facts as would entitle them to have the bill in this case dismissed unconditionally.

\*     \*     \*     \*     \*     \*     \*     \*

On the first question for our decision we are of the opinion that as all the plaintiffs are not estopped from maintaining this bill, the defendant company is not entitled to have it unconditionally dismissed at the plaintiffs' cost.

This brings us to the second question for decision. What relief in equity and good conscience are the plaintiffs entitled to under the proofs in this case? Let us first discover the real ground of complaint as it appears from the proofs. It is plain that it is not the presence of the railway upon the farm in question. No one of those interested, so far as the testimony shows, really wants the defendant company ejected and the operation of the railway stopped. It is admittedly a great convenience to those who occupy this farm, and the proof shows that the presence of the road on the farm, and its operation between Washington and Canonsburg, has probably increased the value of the farm. The real complaint against the railway company is that it will not allow a coal switch from the steam railway to the mine on the farm where coal is being mined. Until the developments in a suit between the defendant railway company and the Meadow Lands Coal Company in regard to the right of the coal company to cross the defendant company's track on an

adjoining farm, brought it to their mind that they might need a switch crossing for coal mining purposes, no objections were made to the presence of the street railway on the farm ; and after it was discovered that the reservations in the grant for switches did not include a switch for a coal road but only switches to manufactories that might be located on the farm, what was demanded by the seven children was not that the company get off, but that a new agreement be executed with provisions for coal switches and some other matters not in the original grant. If the provision for a coal switch had been in the old agreement the claim of irreparable injury, according to the testimony of the plaintiffs themselves, would have been out of the case.

There are other matters to be considered in connection with this question of equitable relief. One is the position in which the issuing of the mandatory injunction specially prayed for would leave the defendant company. Without any fault on its part it has expended thousands of dollars on the route leading through the McClane farm, after having abandoned what was known as the shaft road route which did not touch this farm. To adopt that route now would require the abandonment of two or three miles of road and the loss of these thousands of dollars. The plaintiffs and the three brothers, who together own the farm, evidently do not want the road abandoned, but they want a new contract. And with the alternative of a new contract or loss of thousands of dollars before it, the railway company would be put by the court (if the mandatory injunction prayed for was granted), in a position of inequality in making this new contract, especially when we consider the fact that five of them are not entitled to a more favorable contract than the one they have. Again, this road is mortgaged to secure innocent bondholders whose interests would be prejudiced if the mandatory injunction was enforced. Again, the road is now in full operation between Washington and Canonsburg, and the public is interested in its uninterrupted operation. A mandatory injunction is a drastic remedy. And in a court of equity the effect of its issuance upon the defendant, upon innocent third parties and upon the public are matters that will be considered, as well as the wrong the plaintiff has suffered. If his wrong can be righted by an ac-

tion at law or by equitable relief in a form that will not do injury to others, the drastic remedy ought not to be invoked.

The question, therefore, logically arises : Can such equitable relief be granted in this case ?   The plaintiffs pray specifically for an injunction restraining the maintenance and operation of this railway by the defendant company, and that it be compelled by mandatory injunction " to remove from said premises all material, equipment and the like used in or about or for the construction and operation of a railroad across said premises ; " and it prays generally that the court " grant such other and further relief as to equity and good conscience belong."   The equitable relief that the plaintiffs are entitled to in equity and good conscience, in our opinion, is a switch crossing for a coal yard to carry the coal mined on the farm to the steam railroad. If this is furnished by the defendant company so that a coal road on either side of the defendant company's track can be connected therewith, then, in our opinion, the drastic remedy should not be resorted to and no mandatory injunction should be granted.   This will certainly meet the claim of irreparable injury made on the part of the two plaintiffs who are not estopped from making such a claim, and will be giving the other five children more than they are entitled to under the contract, the validity of which we hold they are estopped from denying.

How, then, shall our decree be drawn to give this relief ? Under the pleadings as they now stand there may be doubt whether we could make an affirmative decree in favor of the plaintiffs giving this relief under the general prayer, although the proofs warranted it.   But we believe there is another way of reaching this end.   During the trial of the case one of the attorneys of the defendant company made in open court verbally an offer to grant to the plaintiffs and their three brothers a switch crossing, the lack of which the plaintiffs' witnesses complained about, and which one of the plaintiffs at one stage of the examination said was all that she had to complain about. One of the plaintiffs' attorneys replied to this offer, " Make your offer in writing.   You have never done it since this thing begun."   When court met to hear the case argued, the attorneys for the defendant company complied with this request, and with leave of court and without objection from anyone filed the following paper, which was made part of the record :

" In the court of common pleas of Washington county, Pa.
" William McClane et al.,
" vs.
" Ebenezer McClane et al., and Washington & Canonsburg
Railway Company.
" No. 1322 in equity.
" Stipulation.

" And now, August 11, 1904, the Washington & Canonsburg Railway Company, by its counsel, offers to the plaintiffs in this case to permit at all times hereafter the construction of such crossings of the railway of the defendant company as may be necessary for the purpose of marketing the coal underlying the land described in the bill filed in this case, the number and location of said crossings and the method of crossing, whether at grade, under or overhead, to be determined by the court, and the cost of construction and maintenance thereof to be borne by either or both parties, as the court at that time may decree.

" Washington & Canonsburg Railway Company,
" By its counsel,
" WALTER LYON,
" JOHN H. MURDOCH."

This puts the case in such a shape that justifies the court in filing a conditional decree, and this is the form in which in our opinion it should be :

" And now, August 17, 1904, this cause came on to be finally heard and was argued by counsel, whereupon, upon due consideration, it is ordered, adjudged and decreed that the plaintiffs' bill and prayers for an injunction be, and the same is hereby, dismissed on the following conditions to be performed by the Washington & Canonsburg Railway Company, one of the defendants herein, to wit:

" 1. That it construct, or allow to be constructed, a crossing or crossings over its railway track such as may be necessary for the purpose of marketing by the steam railroad south of its railway the coal underlying the land described in plaintiffs' bill, the location of said crossing or crossings and the method of the construction of said crossing or crossings, whether at grade, under or overhead, and how paid for, to be agreed upon by the parties to this suit; if, however, such

an agreement cannot be reached as to the location or method of construction of said crossing or crossings or how the same shall be paid for, then either party showing this fact may ask that this bill be reinstated and that the pleadings, if necessary, be amended, if the plaintiff that their bill be amended and if the defendant that its answer be amended or that it be allowed to file a cross bill, so that the pleadings as amended shall require the court to determine the location, method of construction and how the costs thereof shall be borne, and the court so far retains control of the case as to allow it to be so reinstated and the pleadings so amended and the conditions herein named enforced.

" 2. That the defendant company pay to the executors of M. W. McClane, deceased, the sum of fifteen hundred dollars, the balance of the contract price which remains unpaid.

" 3. That the defendant company pay the costs of this proceeding."

In reaching our findings of fact as to the contract made between M. W. McClane and Arthur Kennedy, we excluded the testimony of Arthur Kennedy. Being a stockholder in the defendant company in our opinion made him an incompetent witness to testify as to the making of the agreement he had with Mr. McClane. There is testimony in the case other than that of Mr. Kennedy to justify the finding we have made as to the existence of this agreement.

*Error assigned* was the decree of the court.

*T. F. Birch* and *James I. Brownson*, with them *J. W.* and *Alvin Donnans*, for appellants, cited : Weigold v. R. R. Co., 208 Pa. 81.

*Walter Lyon*, of *Lyon*, *McKee & Mitchell*, with him *John Murdoch & Son*, for appellees.

OPINION BY MR. JUSTICE FELL, January 2, 1906 :

On a former appeal in this case it was decided that the parties who granted to the corporation defendant a right to construct its road were without power to make the grant either

as executors or as devisees, in both of which capacities they had assumed to act: McClane v. McClane, 207 Pa. 465. The order then made reversing the decree and directing that an injunction be issued was afterwards modified, and the defendants were granted leave to answer. At the second hearing on bill, answer and proof, the main question was that of estoppel. Three of the parties named as defendants were only nominally such, and were not acting in sympathy and interest with the real defendant, the Washington and Canonsburg Railway Company. They had joined with the plaintiffs in giving notice to the railway company that suit would be brought unless their demand for a new agreement, permitting a coal road crossing of its tracks, was complied with, and the relief sought was for the benefit of them as well as of the plaintiffs. The court found that three of the seven persons interested in the land were estopped to deny the right of the railway company to maintain its tracks and operate its cars, by their execution of the grant and their subsequent conduct; that two others were estopped by their silence and acquiescence with full knowledge; that as to the remaining two, one of whom was without knowledge and the other was not of full age, an estoppel had not been established. It was also found that the company had entered on the land and constructed its road thereon in good faith, believing it had a valid grant; that the location, construction and operation of the road had enhanced the value of the farm and will increase the value of the shares the plaintiffs will be entitled to receive on the distribution of the estate; that the real ground of complaint as it appeared from the proofs was not the presence of the railway on the farm, but the fact that the company would not allow the construction of a coal switch from a steam road to a mine on the farm to cross its tracks; that permission to make this construction would take out of the case wholly the claim of irreparable injury. The company having obligated itself to permit crossings, an injunction was refused, but the bill was retained to enforce if necessary the agreement. This disposition of the case is manifestly equitable. It gives to the two plaintiffs who have a standing all they can justly claim, because their shares in the distribution of the proceeds of the land when sold will not be diminished. It relieves the company from in-

curring a ruinous loss in the removal of its road from the land in question and other lands on either side of it. The grounds on which it is rested are so fully stated in the opinion of the learned judge of the common pleas that further discussion of them is unnecessary.

The decree is affirmed at the cost of the appellants.